**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **DEXTER WEBB,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL FILE ACTION** |
| **vs.** | ) | **FILE NO._____** |
| | ) | **JURY DEMANDED** |
| | ) | |
| **THE CITY OF RIVERDALE;** | ) | |
| **THE CITY OF RIVERDALE** | ) | |
| **POLICE DEPARTMENT;** | ) | |
| **OFFICER DANIEL VANHEE, in his** | ) | |
| **individual capacity and official capacity** | ) | |
| **as a police officer; SERGEANT** | ) | |
| **AUGUSTUS PALMER, III., in his** | ) | |
| **individual and official capacity as a** | ) | |
| **police officer; CHIEF OF POLICE** | ) | |
| **SAMUEL F. PATTERSON, in his** | ) | |
| **individual and official capacity as a** | ) | |
| **police officer; OFFICER VEASNA** | ) | |
| **SRENG, in her individual and official** | ) | |
| **capacity as a police officer; CAPTIAN** | ) | |
| **PAUL WEATHERS, in his individual** | ) | |
| **and official capacity as a police officer;** | ) | |
| **and JANE DOES 1-10; and JOHN** | ) | |
| **DOES 1-10,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DAMAGES

     **COMES NOW DEXTER WEBB,** Plaintiff herein by and through the undersigned counsel, and sets forth his Complaint for Damages against the above named Defendants as follows:

## PARTIES, JURISDICTION, AND VENUE

     1.    Plaintiff, Dexter Webb, a resident of the state of Georgia.

2.      Defendant, City of Riverdale Police Department is, and at all relevant times, was a municipal corporation organized and existing under the laws of the State of Georgia and is responsible for the policies, practices, customs, and regulations of the City of Riverdale Police Department (herein referred to as "RPD") and for hiring, training, supervising, and disciplining of agents, employees and police officers of the City of Riverdale Police Department. Said Defendant may be served at 6690 Church Street, Riverdale, Georgia 30274. Jurisdiction and venue are proper.

3.      Defendant, City of Riverdale is, and at all relevant times was, a municipal corporation organized and existing under the laws of the State of Georgia and is responsible for the policies, practices, customs, and regulations of the City of Riverdale Police Department (herein referred to as "RPD") and for hiring, training, supervising, and disciplining of agents, employees and police officers of the City of Riverdale Police Department. Said Defendant may be served by serving Mayor Evelyn Wynn-Dixon through City Hall, 7200 Church Street, Riverdale, Georgia, 30274. Jurisdiction and venue are proper.

4.      Defendant, Daniel Vanhee (herein referred to as "Vanhee") and at all relevant times, was a sworn officer of the City of Riverdale and/or City of Riverdale Police Department. In his capacity as a police officer, said Defendant was responsible for policing the City of Riverdale under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Georgia and the City of Riverdale Police Department. Said Defendant is being sued both in his individual and official capacity. Defendant can be served 1310 N Melrose Dr., Suite E, Vista, California 92083-2919. Jurisdiction and venue are proper.

5.      Defendant, Officer Veasna Sreng (herein referred to as "Officer Sreng") is, and at all relevant times was, a sworn officer of the City of Riverdale and/or City of Riverdale Police Department. In her capacity as a police officer, said Defendant was responsible for policing the City of Riverdale under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Georgia and the City of Riverdale Police Department. Said Defendant is being sued in both her individual and official capacity. Defendant can be served at 4001 Noble Creek Drive, NW, Atlanta, Georgia 30327-5127. Jurisdiction and venue are proper.

6.      Defendant, Captain Paul Weathers (herein referred to as "Capt. Weathers") is, and at all relevant times was, a sworn officer of the City of Riverdale and/or City of Riverdale Police Department. In his capacity as a police officer, said Defendant was responsible for policing the City of Riverdale under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Georgia and the City of Riverdale Police Department. Said Defendant is being sued in both his individual and official capacity. Defendant can be served at his place of employment, located at 6690 Church Street, Riverdale, Georgia 30274. Jurisdiction and venue are proper.

7.      Defendant, Sergeant Augustus Palmer III., (herein after referred to as "Sgt. Palmer") is, and at all relevant times was, a sworn officer of the City of Riverdale and/or City of Riverdale Police Department. In his capacity as a police officer, said Defendant was responsible for policing the City of Riverdale under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Georgia and the City of Riverdale Police Department. Based upon information and belief, Defendant Sgt. Palmer also was a supervisor and policy maker within the department and specifically Operations Patrol Supervisor. Said Defendant had supervisory

3

and managerial authority over Defendants Vanhee, Officer Sreng, Capt. Weathers, and Jane and John Does 1-10. Defendant was also responsible for the conducts and acts of his duly authorized officers, specifically Defendants Vanhee, Officer Sreng, and Capt. Weathers, and were charged with the responsibility of ensuring that Defendants Vanhee, Officer Sreng, and Capt. Weathers complied with the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Georgia and the City of Riverdale Police Department, and for hiring, training, supervising, and disciplining of agents, employees and police officers of the City of Riverdale Police Department. Also, the City of Riverdale Police Department delegated policymaking, policy implementation and/or policy enforcement responsibility to Defendant Sgt. Palmer.  Said Defendant is sued both in his individual and official capacities. Defendant can be served at his place of employment, located at 6690 Church Street, Riverdale, Georgia, 30274. Jurisdiction and venue are proper.

8.      Defendant, Chief of Police Samuel F. Patterson (herein after referred to as "Chief Patterson") is, and at all relevant times was, a sworn officer of the City of Riverdale and/or City of Riverdale Police Department. In his capacity as a police officer, said Defendant was responsible for policing the City of Riverdale under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Georgia and the City of Riverdale Police Department. Based upon information and belief, Defendant Chief Patterson also was a supervisor and policy maker within the department and specifically the Chief of Police. Said Defendant had supervisory and managerial authority over Defendants Vanhee, Officer Sreng, Capt. Weathers, and Jane and John Does 1-10. Defendant was also responsible for the conducts and acts of his duly authorized officers, specifically Defendants Vanhee, Officer Sreng,

and Capt. Weathers, and were charged with the responsibility of ensuring that Defendants Vanhee, Officer Sreng, and Capt. Weathers complied with the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Georgia and the City of Riverdale Police Department, and for hiring, training, supervising, and disciplining of agents, employees and police officers of the City of Riverdale Police Department. Also, the City of Riverdale Police Department delegated policymaking, policy implementation and/or policy enforcement responsibility to Defendant Chief Patterson. Said Defendant is sued both in his individual and official capacities. Defendant can be served at his place of employment, located at 6690 Church Street, Riverdale, Georgia, 30274. Jurisdiction and venue are proper.

9.      Defendants Jane Does and John Does 1 through 10 of the City of Riverdale Police Department are, and at all relevant times were, sworn police officers of the City of Riverdale and/or City of Riverdale Police Department. In their capacity as police officers, said Defendants were responsible for policing the City of Riverdale under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Georgia and the City of Riverdale Police Department. Defendants were also directly responsible for the conducts and acts of their duly authorized officers, specifically Defendants Vanhee, Officer Sreng, Capt. Weathers, Chief Patterson, and Sgt. Palmer III., and were charged with the responsibility of ensuring that Defendants Vanhee, Officer Sreng, Capt. Weathers, Chief Patterson, and Sgt. Palmer III complied with the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Georgia and the City of Riverdale Police Department, and for hiring, training, supervising, and disciplining of agents, employees and police officers of the City of Riverdale Police Department. Also the City of Riverdale Police

Department delegated policymaking, policy implementation and/or policy enforcement responsibility to some or all of these defendants. Jurisdiction and venue are proper.

10.     Plaintiff pleads and states that Defendants and their agents and employees, including but not limited to Defendants Vanhee, Officer Sreng, Capt. Weathers, Chief Patterson, Sgt. Palmer III III, and Jane and John Does 1 through 10, negligently performed ministerial duties discussed herein and acted willfully and wantonly toward Mr. Webb, proximately causing his damages. Therefore, no state or federal immunity applies in this matter. Moreover, Defendants have exhibited a pattern and practice of ignoring and violating the rights of the citizens of Georgia, including the Plaintiff, which proximately caused his damages and, furthermore, these defendants were deliberately indifferent to the constitutional rights of citizens, including Mr. Webb, and these Defendants' policies, practices, and customs were the driving force behind the constitutional deprivations suffered by Mr. Webb.

11.     Plaintiff's federal claims arise under 42 U.S.C. §1983 and the First, Fourth and Fourteenth Amendments to the United States Constitution.

12.     Plaintiff's state law claims arise from the same transaction and controversy as Plaintiff's federal claims and include assault, battery, false imprisonment, false arrest, malicious prosecution, intentional infliction of emotional distress and more.

13.     A true and correct copy of the Ante Litem Notice was served on the City of Riverdale, as required by O.C.G.A. § 36-33-5, on September 24, 2009.

## FACTS

14.     At all relevant times, Defendants Vanhee, Officer Sreng, Capt. Weathers, Chief Patterson, Sgt. Palmer III, and Jane and John Does 1 through 10, were sworn members of the City of Riverdale Police Department, and were acting under the color and pretense of

the ordinances, regulations, customs, and usages of the State of Georgia and the City of Riverdale Police Department and under the authority of their office and within the scope of their employment as police officers.

15.     At all relevant times, Defendants City of Riverdale, Chief Patterson, Sgt. Palmer III, and Jane and John Does 1-10 were vested with the obligation of ensuring that the police officers of the City of Riverdale Police Department, including Defendants Vanhee, Officer Sreng, Capt. Weathers, and Jane and John Does 1-10 of the City of Riverdale Police Department, complied with the color and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Georgia and the City of Riverdale Police Department. Defendants City of Riverdale, Chief Patterson, Sgt. Palmer III, and Jane and John Does 1 through 10 of the City of Riverdale Police Department were responsible for hiring, training, supervising, and disciplining of agents, employees and police officers of the City of Riverdale Police Department, including Defendants Vanhee, Officer Sreng, Capt. Weathers, Chief Patterson, Sgt. Palmer III., and Jane and John Does 1 through 10 of the City of Riverdale Police Department.

16.     At the time of said incident on June 8, 2009, Dexter Webb was a citizen and resident of the County of Clayton, in the State of Georgia and in the United States of America. At all times relevant herein, Dexter Webb had legal rights established by the Constitution of the United States, the Constitution of the State of Georgia, and laws set forth by state and federal statutes.

17.     At all relevant times, Defendants Vanhee, Officer Sreng, Capt. Weathers, Chief Patterson, Sgt. Palmer III, and Jane and John Does 1 through 10 worked in or supervised in the Riverdale Police Department.

18.     The illegal and unlawful actions of the Defendants constituted a violation of Mr. Webb's civil rights established by the Constitution of the United States and the law set forth by federal statutes.

19.     The illegal and unlawful actions of the Defendants amounted to assault, battery, false imprisonment, false arrest, malicious prosecution, intentional infliction of emotional distress, and other violations under the state law.

20.     The acts, omissions, systemic corruption, policies, and customs of the City of Riverdale, the City of Riverdale Police Department, and its supervisors, including Chief Patterson, Sgt. Palmer, and Jane and John Does 1 through 10 of the City of Riverdale Police Department, were the driving force behind the constitutional violations of Mr. Webb's rights, including but not limited to Defendants Vanhee, Officer Sreng, Capt. Weathers, and Jane and John Does 1 through 10's effort to meet RPD's unconstitutional and illegal performance targets, with the foreseeable result that officers would violate citizen's civil rights, including Dexter Webb, in the future.

21.     On June 8, 2009, at approximately 8:46 p.m., Dexter Webb was using his cell phone in his parked vehicle, with the engine turned off, in front of his apartment building in Riverdale, GA.

22.     Mr. Webb noticed a police car pass his car, then back up, and stop.

23.     Defendant Vanhee walked up to the right side of Mr. Webb's vehicle (the passenger side door) and shined a light into his truck, and then tapped on Mr. Webb's window.

24.     Mr. Webb asked, "May I help you?" Vanhee said in a harsh tone, "Give me your ID!" Mr. Webb politely asked "for what reason," and continued to say, "I live here."

25.     Vanhee refused to answer his question, so Mr. Webb placed a call to his attorney.

26.     Mr. Webb's attorney asked to speak with Vanhee, however, Vanhee refused to speak with him.

27.     At that point, Mr. Webb's attorney advised him to go into his home.

28.     Mr. Webb exited his vehicle and began walking up towards his apartment.

29.     He unlocked the door with the key and opened the door.

30.     As he opened the door, Vanhee put his foot in the doorway, blocking Mr. Webb entering his apartment.

31.     Vanhee pushed Mr. Webb in his chest, almost knocking him to the ground, in front of his wife and children. Mr. Webb told Vanhee that he had no right to push him.

32.     Robyn Webb asked Vanhee what her husband did, but he refused to respond to her.

33.     Defendant Vanhee called for additional officers.

34.     When the other officers arrived, one of them asked Mr. Webb for his ID. Mr. Webb presented his ID to Officer Marshall Hardeman, and after presenting his ID, it was determined that Mr. Webb was who he purported to be; and there were no outstanding warrants for his arrest.

35.     Mr. Webb was handcuffed and placed under arrest for disorderly conduct and obstruction.

36.     After being handcuffed, he was placed in the back of Defendant Vanhee's police car, without a seat belt.

37.     Defendant Vanhee waited approximately five minutes for all of the other officers to leave the scene, and then told Mr. Webb, "I'm going to teach you a lesson now."

38.     After leaving the apartment complex, Defendant Vanhee proceeded to drive without his siren or lights on, at high speeds, and making sharp turns, as to cause Mr. Webb to be thrown from side to side in the back seat of the police cruiser.

39.     Mr. Webb was scared for his life, because of the speed at which Vanhee was driving.

40.     Rather than proceed directly to the Clayton County jail in compliance with police procedure and protocol, Defendant Vanhee detoured.

41.     Defendant Vanhee drove Mr. Webb to the rear of a building to a vacant parking lot of a Chinese Restaurant.

42.     Mr. Webb asked Defendant Vanhee, when was he going to take him to jail, upon which, Defendant Vanhee made no reply.

43.     Defendant Vanhee, then, turned on the heat to full blast, with all of the windows rolled up, and left him alone in the police cruiser for a substantial amount of time.

44.     According to the history weather report for Riverdale, GA, it was approximately eighty degrees, at this time. Mr. Webb was scared for his life, and attempted to motion for help, all while being trapped in the heat, and barely able to breathe.

45.     At some point, Mr. Webb witnessed Defendant Vanhee make a call from his cell phone.

46.     Approximately fifteen minutes later, Defendant Officer Sreng arrived to said location.

47.     Vanhee said something to Defendant Officer Sreng, and then opened the back door to the police car, and told Mr. Webb to "turn your head," so that Defendant Officer  Sreng could take his picture.

48.     Defendant Officer Sreng noticed that Mr. Webb was "sweating profusely," and asked if he was OK.

49.     Defendant Vanhee told her he was ready for her to take the picture, upon which time, she attempted to take the picture. While attempting to take the picture, the Defendant Officer Sreng stated to Mr. Webb, "You should be in jail."

50.     Mr. Webb asked for Defendant Officer Sreng's badge number, however, she did not give him her badge number.

51.     Defendant Officer Sreng left said location, and Defendant Vanhee continued to hold Mr. Webb in his car for approximately twenty minutes longer, before transporting him to the Clayton County jail.

52.     Once arriving at the Clayton County Jail, Defendant Vanhee kept Mr. Webb in the police cruiser for an unknown amount of time before finally taking him inside.

53.     While sitting in the car outside the station, Mr. Webb tried to get the attention of other officers who were passing by, because it was still extremely hot in the car, and Mr. Webb could barely breathe. Defendant Vanhee took Mr. Webb into the jail to be booked at 11:23 p.m., and he was released the next morning.

54.     According to Clayton County jail records, Defendant Vanhee wrote the arrest ticket at 21:04 (9:04 p.m.); however, Mr. Webb was not booked into the jail until 23:23 (11:23 p.m.).

55.     It is only .94 miles, and takes only two minutes to get from Mr. Webb's residence to the Riverdale City Jail. For over two (2) hours and (19) minutes, Defendant Vanhee committed the acts complained of during this time.

56.     The charges against Mr. Webb were later dismissed by the Clayton County Solicitor's Office.

57.     Upon information and belief, the Defendant RPD and Defendant City of Riverdale hired Defendant Vanhee with actual knowledge of Defendant Vanhee's propensity for harassment, misconduct, and failure to comply with police policies and procedures.

58.     Pursuant to Defendant City of Riverdale and Defendant RPD's policy of hiring and retaining law enforcement officers whose prior conduct indicated their propensity for harassment, misconduct, and failure to comply with police policies and procedures, the Defendant RPD failed to exercise reasonable care and diligence in assessing Defendant Vanhee's record, for duty as a police officer, which failure was the proximate cause of the injuries suffered by Plaintiff on June 8, 2009.

59.     Upon intention and belief, subsequent to the hiring of Defendant Vanhee, the Defendant City of Riverdale and Defendant RPD became aware of numerous incidents of misconduct on the part of Defendant Vanhee.

60.     Upon intention and belief, prior to the incidents giving rise to this action, Defendant Vanhee had been disciplined on, different occasions for various acts of misconduct.

61.     Upon information and belief, Defendant City of Riverdale and Defendant RPD was in receipt of numerous complaints filed by private citizens, against Defendant Vanhee, including, but not limited to, complaints of stopping citizens with no probable cause, making false reports, making false arrests, racial profiling, violating citizens civil rights, harassment, sexual misconduct, rude/disrespectful behavior, excessive use of force, conduct unbecoming of an officer, reckless driving and endangering a passenger while transporting him to jail.

62.     Despite Defendant City of Riverdale and Defendant RPD's actual knowledge of numerous complaints filed by private citizens against Defendant Vanhee, Defendant City of Riverdale and Defendant RPD failed to take responsive action, including failing to provide adequate training and supervision. Such conduct on the part of Defendants constitutes as deliberate indifference to known and predictable risks of harassment and altercations between Defendant Vanhee and private citizens.

63.     As a consequence of Defendants misconduct, Plaintiff has suffered physical injury, pain and suffering, and severe mental and emotional distress, and has incurred special damages in the form of medical bills and attorney's fee.

64.     The Defendant City of Riverdale and Defendant RPD has procured an insurance policy insuring against liability for the acts described herein, that is greater than the amount provided by O.C.G.A § 36-92-2.  Pursuant to O.C.G.A § 36-92-2, Defendant City of Riverdale and Defendant RPD and has therefore waived sovereign immunity to the extent of such insurance coverage.

## **COUNT I**

## **42 U.S.C. § 1983 – VIOLATION OF CIVIL RIGHTS**

### **(ALL DEFENDANTS)**

65.     Plaintiff restates and re-alleges the foregoing paragraphs 1 through 52 as though they were fully repeated herein.

66.     Defendants, acting under color and authority of state law, have maliciously and intentionally deprived Dexter Webb of his rights, privileges, and immunities secured by the United States Constitution and its laws in violation of 42 U.S.C. § 1983.

67.     Defendants maliciously and intentionally deprived Mr. Webb of his Fourth Amendment and Fourteenth Amendment rights, including the prohibition against unreasonable search and seizures.

68.     Defendants maliciously and intentionally deprived Mr. Webb of his Fourteenth Amendment rights, including the prohibition against depriving persons of life, liberty, or property with due process of law, and the prohibition against denying any person equal protection under the laws.

### COUNT II

### VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS

### TO THE UNITED STATES CONSTITUION UNDER 42 U.S.C. § 1983

### UNCONSTITIONAL SEARCH AND SEIZURE

### (ALL DEFENDANTS)

69.     Plaintiff restates and re-alleges the foregoing paragraphs 1 through 60 as though they were fully repeated herein.

70.     Defendant Vanhee's conduct in unlawfully entering into Plaintiff residence and detaining Plaintiff without probable cause, constitute as a violation of Plaintiff's Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure, and is actionable pursuant to 42 U.S.C. § 1983.

### Unreasonable Seizure

71.     Defendants had no particularized and objective basis to believe that Mr. Webb whom they seized, had committed or was in the process of committing any criminal offense.

72.     The detention of Mr. Webb was unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

73.     The seizure of Mr. Webb was excessive and unreasonable in duration and scope.

74.     The seizure of Mr. Webb constituted an arrest, when Defendant Vanhee prevented Mr. Webb from entering his home, for which probable cause was required.

75.     The arrest of Mr. Webb was unreasonable.

76.     The seizure of Mr. Webb for over two hours before bringing him into the station for booking was unreasonable in duration and scope.

77.     Defendant Vanhee intended to confine Mr. Webb, committed acts resulting in his confinement, and Mr. Webb was aware of his confinement.  Mr. Webb reasonably did not believe that he was free to leave.

78.     City of Riverdale Police Department had neither a warrant, nor probable cause plus exigent circumstances, authorizing a search and seizure of Mr. Webb.

79.     Defendant Vanhee had neither a warrant, nor probable cause plus exigent circumstances, authorizing a search and seizure of Mr. Webb.

80.     Defendants acted with reckless, deliberate and callous indifference to the constitutionally protected rights of Mr. Webb.

81.     It was clearly established on June 8, 2009 that detaining, arresting, or searching Mr. Webb, about whom officers had no reasonable suspicion or probable cause, simply because he was sitting in his vehicle in a particular neighborhood, would violate Mr. Webb's clearly-established constitutional rights.  The Defendants had fair warning that their conduct would violate the Constitution, and no reasonable officer could have believed that the detention, arrest, or search of Mr. Webb was legal.

82.     It was clearly established on June 8, 2009 that entering Mr. Webb's private home in the absence of a warrant or probable cause plus exigent circumstances would violate Plaintiff Webb's clearly-established constitutional rights.  The Defendants had fair warning that their

conduct would violate the Constitution, and no reasonable officer could have believed that the warrantless entry of Mr. Webb's private home was legal.

83.    It was clearly established on June 8, 2009 that arresting Mr. Webb within his private home in the absence of a warrant, or probable cause plus exigent circumstances, would violate Mr. Webb's clearly-established constitutional rights.  The Defendants had fair warning that their conduct would violate the Constitution, and no reasonable officer could have believed that the warrantless arrest of Mr. Webb in his private home was legal.

**EXCESSIVE FORCE**

84.    Defendant Vanhee used and directed excessive force against Mr. Webb when he was not authorized to utilize any force.

85.    Defendants' use of excessive force was unreasonable.

86.    As a result of Defendants actions depriving Mr. Webb of his civil rights in violation of 42 U.S.C. § 1983, Plaintiff has suffered damages as outlined in detail in this Complaint, including pain and suffering.

87.    The actions of the Defendants, as stated herein, denied Plaintiff his right to equal protection under the law and his right to the Due Process Clause of the Fourteenth Amendment to the United States Constitution, for which Defendants are liable for general, special, and punitive damages where allowed by law.

**COUNT III**

**VIOLATION OF FIRST AND FOURTEENTH AMENDMENTS**

**TO THE UNITED STATES CONSTITUION UNDER 42 U.S.C. § 1983**

**(ALL DEFENDANTS)**

88.    Plaintiff restates and re-alleges the foregoing paragraphs 1 through 52 as though they were fully repeated herein.

89.     By responding to Mr. Webb who unobtrusively asked for names, badge numbers, or other information about the officers' execution of their duties with force, threats, and other acts of retaliation, the Defendants violated the rights of Mr. Webb under the United States Constitution verbally to question, challenge, or criticize the police in a manner that does not obstruct the officers.

90.     Defendants acted with reckless, deliberate and callous indifference to the constitutionally protected rights of Mr. Webb.

91.     It was clearly established on June 8, 2009 that preventing persons from exercising their First Amendment right verbally to question, challenge, or criticize the police in a manner that does not obstruct the officers, or punishing them for doing so, violated Mr. Webb's clearly-established constitutional rights.  The Defendants had fair warning that their conduct would violated the Constitution, and no reasonable officer could have believed that under these circumstances it was legal to prevent persons from exercising their First Amendment rights or punish them for doing so.

92.     The Defendants' actions at Mr. Webb's home were conducted pursuant to a City of Riverdale Police Department policy, practice and/or custom with the force of law to prevent persons from exercising their First Amendment right verbally to question, challenge, or criticize police officers in a manner that does not obstruct legitimate law enforcement activity, and/or punish them for doing so.

**COUNT IV**

**42 U.S.C. § 1983 – MONELL LIABILITY**

**(ALL DEFENDANTS)**

93.     Plaintiff restates and re-alleges the foregoing paragraphs 1 through 52 as though they were fully repeated herein.

94.     For a significant period leading up to the incident with Dexter Webb, Defendants City of Riverdale doing business as City of Riverdale Police Department, Chief Patterson, Sgt. Palmer III, and Jane and John Does 1 through 10 have had a persistent widespread practice of allowing City of Riverdale Police Officers to make unlawful arrests of private citizens. Further, these Defendants were aware and deliberately indifferent to the widespread and systemic corruption within the Riverdale Police Department. Such custom, policy, and practice was the driving force leading to the violations of Mr. Webb's civil rights, as describe in this Complaint.

95.     Defendants City of Riverdale doing business as City of Riverdale Police Department, Chief Patterson, Sgt. Palmer III, and Jane and John Does 1 through 10 have a persistent and widespread practice of allowing City of Riverdale Police Department officers use unreasonable harassment without justification. Further, these defendants were deliberately indifferent to this practice and custom within the Riverdale Police Department, thereby allowing the deprivation of Mr. Webb's civil rights, as described in this Complaint.

96.     Defendants City of Riverdale doing business as City of Riverdale Police Department, Chief Patterson, Sgt. Palmer III, and Jane and John Does 1 through 10 have a persistent and widespread practice of allowing City of Riverdale Police officers to violate City of Riverdale Police Department's own policies and procedures. Further, these Defendants were deliberately indifferent to this practice and custom within the Riverdale Police Department by failing to enforce policies; failing to properly train; failing to properly discipline; thus creating a culture within the Riverdale Police Department where in violating citizen's civil rights was not only tolerated, but encouraged; thereby allowing the deprivation of Mr. Webb's civil rights as described in this complaint.

97.     Defendants City of Riverdale doing business as City of Riverdale Police Department, Chief Patterson, Sgt. Palmer III, and Jane and John Does 1 through 10 have had a persistent and widespread practice of failing to properly train and supervise the City of Riverdale Police officers, thereby allowing the deprivation of Mr. Webb's civil rights, as described in this Complaint.

98.     Defendants City of Riverdale doing business as City of Riverdale Police Department, Chief Patterson, Sgt. Palmer III, and Jane and John Does 1 through 10 have had a persistent and widespread practice of ratifying and condoning the unlawful and illegal activity of the City of Riverdale Police officers, thereby allowing the deprivation of Mr. Webb's civil rights, as described in this Complaint.

99.     Defendants City of Riverdale doing business as City of Riverdale Police Department, Chief Patterson, Sgt. Palmer III, and Jane and John Does 1 through 10 in failing to properly train,  monitor, and supervise the City of Riverdale Police officers, thereby allowing the deprivation of Mr. Webb's civil rights, as described in this Complaint

<u>**COUNT V**</u>

<u>**VIOLATION OF THE GEORGIA CONSTITUTION, ART. I, SEC.  ¶¶ XIII, XVII**</u>

**(INDIVIDUAL DEFENDANTS)**

100.    Plaintiff restates and re-alleges the foregoing paragraphs 1 through 52 as though they were fully repeated herein.

101.    The Individual Defendants, by the foregoing actions, committed unreasonable seizures, used excessive force, and conducted unreasonable searches in violation of Georgia Constitution, Art. I, Sec. 1 ¶¶ XIII, XVII.

102.    Plaintiff Webb is entitled to damages as set forth herein.

## COUNT VI

## VIOLATION OF GEORGIA CONSTITUTION, ART. I SEC. 1¶¶ V. IX

## UNCONSTITIONAL DENIAL AND SUPPRESSION OF THE RIGHT OF FREE SPEECH

## AND THE RIGHT TO QUESTION THE CONDUCT OF POLICE OFFICERS

### (INDIVIDUAL DEFENDANTS)

103.    Plaintiff restates and re-alleges the foregoing paragraphs 1 through 52 as though they were fully repeated herein.

104.    By responding to Plaintiff Webb who unobtrusively asked for names, badge numbers, and other information about the officers' execution of their duties with force, threats, and other acts of retaliation, the Defendants violated the rights of Mr. Webb under the Georgia Constitution verbally to question, challenge, or criticize the police in a manner that does not obstruct legitimate law enforcement activity.

105.    Plaintiff Webb is entitled to damages as set forth herein.

## COUNT VII

## TRESPASS, ASSAULT AND BATTERY

### (DEFENDANT VANHEE)

106.    Plaintiff restates and re-alleges the foregoing paragraphs 1 through 52 as though they were fully repeated herein.

107.    Defendant Vanhee's entry into the premises of Mr. Webb's residence amounts to trespass and malicious and intentional assault and battery on Mr. Webb's person.

### TRESPASS

108.    Defendant Vanhee blocked Mr. Webb's access to his home by placing his body in the path of Mr. Webb and into the private home of Mr. Webb without a warrant, probable

cause plus exigent circumstances, or consent and this act constitute a trespass in violation of O.C.G.A. § 51-10-3.

109.    Defendants, with malice and oppression, trespassed upon and/or combined and conspired to commit trespass.

110.    Plaintiff Webb is entitled to damages as set forth herein.

## ASSAULT AND BATTERY

111.    By grabbing Plaintiff's shoulder, and then violently pushing him in his chest, almost knocking him down, Defendant Vanhee put Mr. Webb in reasonable fear and apprehension of imminent harmful or offensive contact.

112.    Defendant Vanhee's conduct and comments amounts to a threat to commit battery on the person of Mr. Webb. Defendant is liable to Mr. Webb for committing the offense of assault.

113.    Mr. Webb has suffered damages as a direct result of the conduct of Defendant Vanhee.

114.    Defendant Vanhee had no legal right to put his hands on Mr. Webb. By grabbing Mr. Webb's shoulder and violently pushing him through his door, Defendant Vanhee committed the offense of battery.

115.    By detaining Mr. Webb in his police car for over two hours, with the windows rolled up, and the heat on full blast, Defendant Vanhee committed the offense of battery. Because Mr. Webb suffers from sleep apnea, Defendant Vanhee's actions could have killed Mr. Webb.

116.    Defendant Vanhee's conduct carried substantial physical harm, and severe emotional and psychological distress.

117.    Defendant Vanhee intended to make harmful or insulting or provoking contact with the Plaintiff Mr. Webb.  Defendant Vanhee acts of  grabbing, pushing Mr. Webb, driving recklessly, parking behind an vacant store, turning the heat on in the car to excess amounts in June, and continue to hold Plaintiff Mr. Webb in the vehicle were offensive, unlawful acts that

would have been offensive to an ordinary person.  Such acts constituted batter under the laws of Georgia.

118.    Defendant Vanhee intended to make harmful or insulting or provoking contact with the Plaintiff Mr. Webb.  Defendant Vanhee acts of  grabbing, pushing Mr. Webb, driving recklessly, parking behind a vacant store, turning the heat on in the car to excess amounts in June, and continue to hold Plaintiff Mr. Webb in the vehicle were illegal attempts to commit a physical injury upon Plaintiff Mr. Webb and are actionable under O.C.G.A. § 51-1-14.

119.    Defendant Vanhee intended to make harmful or insulting or provoking contact with the Plaintiff Mr. Webb.  Defendant Vanhee acts of grabbing, pushing Mr. Webb, driving recklessly, turning the heat on in the car to excess amounts in June, and continue to hold Plaintiff Mr. Webb in the vehicle were offensive, Defendant Vanhee intentionally caused physical injury to Plaintiff Mr. Webb, in violation of O.C.G.A. § 51-1-13.

120.    All Defendants combined and conspired to accomplish the unlawful objective of committing a battery on Mr. Webb by unlawful means.

121.    Defendant Vanhee, with malice and oppression, committed a battery on and/or combined and conspired to commit a batter on, Mr. Webb, and did so under color of legal process.

122.    Plaintiff Mr. Webb is entitled to damages as set forth herein.

123.    Defendants' unwelcome, unwarranted, and unjustified use of force and intentional infliction of harm to the Plaintiff constituted battery under Georgia Law.

## COUNT III

## FALSE ARREST AND FALSE IMPRISONMENT UNDER GEORGIA LAW

### (ALL DEFENDANTS)

124.    Plaintiff restates and re-alleges the foregoing paragraphs 1 through 63 as though they were fully repeated herein.

125.    By grabbing Mr. Webb's shoulder, and violently shoving him through his door, Defendant Vanhee conveyed a message, that Mr. Webb was not free to leave, and therefore unlawfully detained the Plaintiff.

126.    Defendants' stopping, arresting, and imprisoning the Plaintiff was without probable cause, was maliciously done, and therefore constitute the tort of false arrest and false imprisonment under Georgia Law.

127.    Mr. Webb's arrest was motivated by Defendant Vanhee's decision to inflict punishment upon Mr. Webb, and to teach him a lesson.

128.    Mr. Webb seeks a recovery of compensatory damages on account of his false arrest and unlawful detention, and for having been unlawfully deprived of her liberty, in such amount as the jury determines to be appropriate to compensate him for this wrongful act against him.

## COUNT IV

## MALICIOUS PROSECUTION UNDER GEORGIA LAW AND 42 U.S.C. § 1983

### (ALL DEFENDANTS)

129.    Plaintiff restates and re-alleges the foregoing paragraphs 1 through 68 as though they were fully repeated herein.

130.     Defendant Vanhee's wrongful arrest of the Plaintiff initiated a criminal proceeding against the Plaintiff, which proceeding against the Plaintiff has concluded in Plaintiff's favor, and all charges were dismissed by the Clayton County Solicitors Office.

131.     Plaintiff could not have obstructed Defendant Vanhee, because Plaintiff was within his rights to leave the encounter with Defendant Vanhee, therefore, there was no probable cause to arrest Plaintiff.

132.     As a direct and proximate result of the Defendants' malicious prosecution of Mr. Webb, Mr. Webb was deprived of his freedom, and sustained damages in such an amount as the jury deems appropriate to compensate Mr. Webb for the deprivation of his personal freedom and interests.

## COUNT V

## NEGLIGENCE

## (ALL DEFENDANTS)

133.     Plaintiff restates and re-alleges the foregoing paragraphs 1 through 72 as though they were fully repeated herein.

134.     Defendants negligently performed ministerial duties as defined and required by Georgia law by allowing and condoning the behavior of the officers of the City Riverdale Police Department, proximately causing the sustained injuries to Mr. Webb. Therefore, no state immunity applied in this matter.

135.     Defendants negligently performed ministerial duties as defined and required by Georgia Law when they failed to properly supervise and train their officers, proximately causing the sustained injuries to Mr. Webb.  Therefore, no state immunity applied in this matter.

24

136.     As a result of Defendants' negligence, plaintiff has suffered damages as outlined in detail in this Complaint.

## COUNT V

## NEGLIGENT HIRING

### (ALL DEFENDANTS)

137.     Plaintiff restates and re-alleges the foregoing paragraphs 1 through 72 as though they were fully repeated herein.

138.     Defendant City of Riverdale and Defendant Riverdale Police Department failed to exercise reasonable diligence and care in hiring Defendant Vanhee, and such failure was the proximate cause of the injuries suffered by the Plaintiff on June 8, 2009.

139.     Under the doctrine of *respondeat superior*, agency, or apparent agency, Defendants City of Riverdale doing business as City of Riverdale Police Department, Chief Patterson, Vanhee, Palmer III, Sreng, Weathers, John Does 1-10 and Jane Does 1-10 are responsible for the actions of their officers.

## COUNT VI

## NEGLIGENT RETENTION

### (ALL DEFENDANTS)

140.     Plaintiff restates and re-alleges the foregoing paragraphs 1 through 74 as though they were fully repeated herein.

141.     Defendant City of Riverdale and Defendant Riverdale Police Department failed to exercise reasonable diligence and care in continuing to employ Defendant Vanhee, and such failure was the proximate cause of the injuries suffered by the Plaintiff on June 8, 2009.

## COUNT VII

## NEGLIGENT TRAINING AND SUPERVISION

### (ALL DEFENDANTS)

142.   Plaintiff restates and re-alleges the foregoing paragraphs 1 through 76 as though they were fully repeated herein.

143.   Defendant City of Riverdale and Defendant Riverdale Police Department failed to exercise reasonable diligence and care in training and supervision of Defendant Vanhee, and such failure was the proximate cause of the injuries suffered by the Plaintiff on June 8, 2009.

144.   Defendant City of Riverdale and Defendant RPD failed to properly supervise, control, and discipline Defendant Vanhee, who has had a history of complaints made against him prior to and subsequent the incident involving Plaintiff. Said failure was continuing and constitutes a policy or custom on the part of Defendant City of Riverdale and Defendant RPD and its policy makers.

## COUNT VIII

## NEGLIGENT ENTRUSTMENT

### (ALL DEFENDANTS)

145.   Plaintiff restates and re-alleges the foregoing paragraphs 1 through 79 as though they were fully repeated herein.

146.   Defendant Vanhee's actions came as a direct and proximate result of Defendant City of Riverdale and Defendant RPD's negligent entrustment of Defendant Vanhee, which was the direct and proximate result of Plaintiff injuries, and emotional distress.

## COUNT IX

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (ALL DEFENDANTS)

147.     Plaintiff restates and re-alleges the foregoing paragraphs 1 through 81 as though they were fully repeated herein.

148.     Defendant Vanhee's conduct was extreme and outrageous and was intended to and did cause Plaintiff to suffer severe mental distress.

149.     Defendants' actions constituted an intentional and willful infliction of emotional distress upon Plaintiff for which Defendants' are liable to Plaintiff for general, special, and punitive damages where allowed by law.

150.     As a proximate result of Defendant Vanhee's conduct, Mr. Webb suffered mental pain, anguish, and continued psychological problems.

## COUNT X

## PUNITIVE DAMAGES

### (ALL DEFENDANTS)

151.     Plaintiff restates and re-alleges the foregoing paragraphs 1 through 85 as though they were fully repeated herein.

152.     Defendants' outrageous conduct in causing Mr. Webb to be charged with a crime, arrested, placed in handcuffs, and jailed, was not only malicious and outrageous, but exhibited a specific intent to cause harm to Mr. Webb, for which Defendants are liable for punitive damages, in such an amount as the jury determines to be appropriate, to punish them or to deter them from repeating such willful and malicious conduct.

153.    Defendants' maliciously and intentionally injured Plaintiff, and their conduct evidences a willful, wanton, and reckless disregard of Plaintiff's rights.

154.    As a result of Defendants' malicious and willful conduct, Plaintiff is entitled to a punitive damages award against Defendants.

## COUNT XII

## DAMAGES

### (ALL DEFENDANTS)

155.    Plaintiff re-alleges and incorporates each and every allegation in the foregoing paragraphs as if fully set forth herein.

156.    As a result of Defendants' conduct, they are, jointly and severally, liable to the Plaintiff for all damages allowed under law for the immense emotional and physical pain and suffering endured by Dexter Webb.

## COUNT XI

## ATTORNEY'S FEES

### (ALL DEFENDANTS)

157.    Plaintiff restates and re-alleges the foregoing paragraphs 1 through 87 as though they were fully repeated herein.

158.    Defendant Vanhee acted in bad faith and has caused Mr. Webb unnecessary trouble and expense, which entitles Mr. Webb to reimbursement for the expenses of litigation, including reasonable attorney's fees pursuant to O.C.G.A. §13-6-11.

**WHEREFORE,** Plaintiff demands a jury trial and prays as follows:

A)    That service of process be made upon Defendants according to law;

B)      That Plaintiff recover from Defendants a sum in the amount to be determined by

the enlightened conscience of a jury for pain and suffering, the full amount of his

medical expenses, the full amount of related expenses for aggravated damages to

deter the Defendants from committing similar wrongs or Plaintiff recover an

amount to fairly compensate for his loss sustained as determined by this court;

C)      That the Plaintiff recover his costs and reasonable attorney's fees pursuant to 42

U.S.C. § 1988 and O.C.G.A. § 13-6-11;

D)      All Defendants are jointly and severally liable for damages;

E)      That all issues be tried by jury; and

F)      For such other and further relief as the Court may deem just and proper.

This _____ day of _____, 2010.

Respectfully submitted,

_____
Nicole Y. Jones, Esq.
Georgia bar No. 001352
**Jones Federal & Appellate LLC**
8677 Hospital Drive
Douglasville, GA 30134
(770) 934-8789 (telephone)
(678) 990-5077 (fax)